**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRYAN PRICHARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:05-0748** |
| | ) | **Judge Trauger** |
| **v.** | ) | |
| | ) | |
| **RICK SMITH,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

This case is before the court on a Motion for Summary Judgment filed by the defendant
(Docket No. 26), to which the plaintiff has responded (Docket No. 30), and the defendant has
replied (Docket No. 33). For the reasons discussed herein, the defendant's motion will be
denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The plaintiff, Bryan Prichard, is a motorcycle enthusiast who lives with his parents in
Murfeesboro, Tennessee.[1] Mr. Prichard's interest in motorcycles led him, on the evening of June
16, 2005, to attend Bike Night at the Coconut Bay Café in Murfeesboro. Mr. Prichard rode on
his motorcycle from his home to the event. When he arrived at the parking lot, it was so
crowded with fellow motorcycle enthusiasts that Mr. Prichard almost had to stop. He held the

---

[1]Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint
(Docket No. 1), attach. Compl., the plaintiff's Response to the Motion for Summary Judgment
(Docket No. 30), and the plaintiff's Response to Defendant's Statement of Facts (Docket No.
31).

1

clutch in and proceeded forward at walking speed.[2]  After going a ways, Mr. Prichard was

grabbed from behind by the defendant, Rick Smith, a Tennessee state trooper.  This was Mr.

Prichard's first interaction with Trooper Smith, who did not identify himself.  Trooper Smith

grabbed Mr. Prichard by the collar, lifted him from the bike, and shouted "Stop, I got you, you

son of a bitch."      Trooper Smith turned off the ignition on the bike and shouted at Mr.

Prichard to give over his license.  Mr. Prichard got out his wallet.  Trooper Smith grabbed the

wallet out of Mr. Prichard's hand and threw it on the ground.  Then Trooper Smith slammed Mr.

Prichard onto the gas tank of his motorcycle and applied handcuffs.  At no point did Mr.

Prichard attempt to resist Trooper Smith, although he did look up once to try to figure out what

was happening.  Trooper Smith next searched Mr. Prichard, emptying Mr. Prichard's pockets

and throwing his keys into the parking lot.

Naturally, a crowd formed, but it did not intervene.  Trooper Smith walked Mr. Prichard

through the crowd to his patrol car and slammed Mr. Prichard down onto the trunk of the car.

Trooper Smith cursed at Mr. Prichard and demanded that Mr. Prichard admit that he had eluded

Trooper Smith on Interstate 24, driving recklessly.  Mr. Prichard had not driven on Interstate 24

on his way to the Coconut Bay Café, and he made no admission.  A deputy sheriff soon arrived

on the scene and further pressed Mr. Prichard to admit that he had driven recklessly on the

interstate.  Trooper Smith confined Mr. Prichard to the back of the patrol car, where he remained

for roughly twenty-five minutes.

Trooper Smith was looking for a motorcyclist who had passed him earlier that evening,

---

[2]At his deposition, Mr. Prichard testified that he "couldn't even idle it in first gear.  I had
to just clutch in and out and pat my foot."  (Docket No. 31 at ¶ 25.)

2

on Interstate 24, at a very high rate of speed. Trooper Smith had first received a dispatch for a speeding motorcyclist meeting the description: "black bike, black helmet, black pants." Soon thereafter he encountered such a motorcyclist on the interstate. Trooper Smith has since alleged that the suspect's helmet appeared "grayish-dark," with a dark face-shield, and testified at his deposition that the helmet looked dark coming towards him, light going past him, and dark going away from him. The suspect's vehicle did not appear to have any license plates. The dispatcher had told Trooper Smith that it was Bike Night at the Coconut Bay Café, and Trooper Smith had set out to the Coconut Bay Café in search of the elusive motorcyclist.

Trooper Smith arrived at the Coconut Bay Café roughly five minutes later, and only a few minutes after that, he observed Mr. Prichard moving slowly into the parking lot on his motorcycle. Among the multitude of motorcycle enthusiasts and their respective vehicles surrounding both Trooper Smith and Mr. Prichard at the Coconut Bay Café, Trooper Smith determined that he had spotted his man.

Mr. Prichard was wearing a red helmet with reflectorized silver portions and a clear face shield. In addition, he wore light-colored tennis shoes, and his motorcycle displayed a slightly folded temporary license plate. The tail pipe was on the right side of the motorcycle, whereas the tail pipe on the reckless suspect's motorcycle appears to have been on the left side.

Nevertheless, Trooper Smith took action to detain Mr. Prichard. Afterwards, while Mr. Prichard was seated in the patrol car, Trooper Smith ran a check on Mr. Prichard's license information and on the vehicle identification number on his motorcycle. Trooper Smith talked with Mr. Prichard's brother, who was in the parking lot, and called Mr. Prichard's home twice to discuss matters with Mr. Prichard's parents. As a result of those calls, Mr. Prichard's father

3

came to the Coconut Bay Café to explain to Trooper Smith that his son had only just left home during the time in question and that his route to the Coconut Bay Café could not have taken him near Interstate 24. Shortly after this discussion, Trooper Smith let Mr. Prichard out of the car, removed the handcuffs, and permitted him to leave. All criminal charges against Mr. Prichard concerning the events of Bike Night were eventually dropped.

On September 22, 2005, Mr. Prichard filed this action in this court, pursuant to 42 U.S.C. § 1983, alleging that Trooper Smith had violated his right of freedom from unreasonable seizure under the Fourth Amendment, joined with two counts filed on behalf of his mother, Linda Prichard, against defendant Smith, for (1) intentional infliction of emotional distress and (2) negligent infliction of emotional distress. On November 29, 2005, this court entered an order dismissing Ms. Prichard's claim for negligent infliction of emotional distress (Docket No. 9) and, on April 4, 2006, the parties entered a joint stipulation agreeing to dismiss Ms. Prichard's remaining claims without prejudice (Docket No. 21), pursuant to which this court dismissed those claims on April 5, 2006. On June 28, 2006, the defendant filed a Motion for Summary Judgment as to Mr. Prichard's § 1983 claim.

**ANALYSIS**

I.      **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential

4

element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact

5

must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II.     Whether the Defendant Performed a *Terry* Stop

It has long been established that an arrest unsupported by probable cause violates the Fourth Amendment and is actionable. *See United States v. Hardnett*, 804 F.2d 353, 355 (6th Cir. 1986). Beginning with *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968), however, the Supreme Court recognized that certain investigative seizures of persons need not be supported by probable cause. In *Terry*, the Supreme Court did not hold that such seizures were beyond the reach of the Fourth Amendment but rather that a different standard applied: the officer must "'point to specific and articulable facts' which give rise to a reasonable suspicion of criminal activity." *Hardnett*, 804 F.2d at 356 (quoting *Terry*, 392 U.S. at 21-22). Whether a Terry stop exceeds the bounds of this initial "reasonable suspicion" and becomes an arrest is determined by the "degree of intrusion" of the conduct at issue and, more specifically, whether the intrusion "was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *Id.* (citing *Terry*, 392 U.S. at 19-20.)

The plaintiff alleges that the defendant arrested him without probable cause and with unreasonable force in violation of his Fourth Amendment rights. The defendant argues that his conduct at the Coconut Bay Café did not amount to an arrest, but instead constituted a *Terry* stop, for which he had the requisite reasonable suspicion. In addition, the defendant argues that, should his conduct have amounted to an arrest, he had probable cause to make that arrest. The

6

court finds that the evidence, viewed in the light most favorable to the plaintiff, demonstrates at least a factual issue on all of those points.

## A. Reasonable Suspicion

First, the plaintiff has proffered sufficient evidence such that a jury could determine that the defendant did not have reasonable suspicion to make the stop. Reasonable suspicion is "more than an ill-defined hunch; it must be based upon 'a particularized and objective basis for suspecting the particular person . . . of criminal activity.'" *Houston v. Clark County*, 174 F.3d 809, 813 (6th Cir. 1999) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Whether or not a reasonable suspicion exists must "be viewed in the totality of the circumstances." *Weaver v. Shadoan*, 340 F. 3d 398, 407 (6th Cir. 2003) (citing *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998). Therefore, the court "must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *United States v. Smith*, 263 F.3d 571, 588 (6th Cir. 2000).

The plaintiff's evidence suggests that the defendant did not have a reasonable suspicion to stop the plaintiff. In fact, the initial description of the suspect, "black bike, black helmet, black pants," appears to have actually contradicted the appearance of the plaintiff as he entered the parking lot at the Coconut Bay Café. It may be that, as the defendant argues, most colorful helmets, when backlit by headlights, appear dark. Similarly, it may be that, in nighttime conditions, a clear visor would not look materially different from a dark visor. But in that case, the defendant's observations on Interstate 24 cannot be said to have given rise to a reasonable suspicion that the plaintiff was the elusive motorcyclist. If most helmets and all visors look dark

at night, then there is no reason to believe that the plaintiff's helmet, rather than any number of the many motorcycle helmets present that night, belonged to the culprit. At best, the defendant has demonstrated a factual issue as to whether his initial description of the elusive motorcyclist can be reconciled with the plaintiff's actual appearance on the night in question. Such a demonstration does not amount to a reasonable suspicion that the plaintiff, rather than any other motorcycle enthusiast present that night, had committed the traffic violations.

The defendant argues that the plaintiff's conduct, as he entered the parking lot, provided the defendant with a reasonable suspicion to make the stop. Specifically, the defendant alleges that the plaintiff was riding the motorcycle into the crowd in a dangerous manner and gave the impression that he was trying to elude the defendant by "getting lost in the crowd." (Docket No. 27 at p. 10.) But in so arguing, the defendant misunderstands his burden on a motion for summary judgment. Merely alleging that the defendant engaged in dangerous conduct—where the plaintiff has submitted numerous sources of evidence showing that he did no such thing—does not demonstrate that "no disputed fact" exists, but rather, creates a disputed fact. According to the plaintiff's allegations, and the testimony of several onlookers, the plaintiff was padding the motorcycle into the parking lot on his feet, going so slowly that the defendant was able to catch up to him from behind by walking. Under those facts, the defendant did not have a reasonable suspicion that the plaintiff was endangering the crowd or attempting to escape him. In fact, the undisputed facts show that the defendant simply stopped the first motorist to arrive at the Coconut Bay Café after himself.

Finally, the defendant argues that he had reasonable suspicion to stop the plaintiff because the plaintiff's temporary license plate was partially obscured, in violation of Tenn. Code

8

Ann. § 55-4-110. Leaving aside the question of whether such a violation could justify the conduct at issue, there is a genuine issue of fact as to whether the temporary plate was unlawfully obscured. In fact, several pieces of evidence, such as the defendant's failure to cite the plaintiff for violation of Tenn. Code Ann. § 55-4-110, or, apparently, even mention that requirement on the night in question, militate strongly against the defendant's contention.

### B. Conduct "Reasonably Related" In Scope

Even if the defendant did have a "reasonable suspicion" to make an initial *Terry* stop, the plaintiff has proffered sufficient evidence to show that the stop as executed was not "reasonably related" in scope to the situation at hand. The length and manner of an investigative stop must "be reasonably related to the basis for the initial intrusion." *Houston v. Clark County*, 174 F.3d at 814 (citing *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996). If the length and manner of the stop "is unreasonable, the seizure then ripens into an arrest, which must be supported by probable cause." *Smoak v. Hall*, 460 F.3d 768, 779 (6th Cir. 2006). The Sixth Circuit directs the court to "consider the length of the detention, the manner in which it is conducted, and the degree of force used." *Id.*, *see also United States v. Perez*, 440 F.3d 363, 372 (6th Cir. 2006) ("The investigative means used should also be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time.")

The Sixth Circuit has held that "detention in a police cruiser does not automatically transform a *Terry* stop into an arrest. . . . Nor does the use of handcuffs exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution." *Houston v. Clark County*, 174 F.3d at 815. However, the Sixth Circuit has also made clear that, for the use of handcuffs and detention, "the Fourth Amendment requires some reasonable belief that the suspect is armed and

9

dangerous or that the restraints are necessary for some other legitimate purpose, evaluated on the facts of each case." *Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005). Likewise, a "lawful stop does not necessarily carry with it the authority to conduct a pat-down search." *Id*. at 822 (citing *Terry*, 392 U.S. at 27). Instead, to justify a pat-down search, "the officer must articulate specific facts that would warrant 'a reasonably prudent man in the circumstances . . . in the belief that his safety or that of others was in danger.'" *Id*. (quoting *Terry*, 392 U.S. at 27).

Viewed in the light most favorable to the plaintiff, the evidence is sufficient for a jury to decide that the defendant's conduct was not reasonably related to the situation at hand. The plaintiff's allegations—that the defendant grabbed him from behind while the plaintiff was seated on a moving motorcycle, in a crowded parking lot—are serious. The plaintiff showed no signs of being armed or dangerous and made no efforts to resist the defendant. The defendant has brought forward no specific facts that would warrant a prudent man's slamming the plaintiff down on the gas tank, handcuffing him, searching his pockets, throwing his belongings onto the parking lot, or detaining him in a squad car.[3] Neither does the evidence show that those actions were necessary to serve any other legitimate purpose. The defendant alleges that his actions served the purpose of preventing the plaintiff from escaping into the crowd, to which he posed a danger. However, at the very least, there exist factual issues as to whether the plaintiff's entry into the parking lot posed any danger to the crowd of people therein or demonstrated any intent to escape the defendant. The plaintiff's evidence indicates that he posed little to no danger and

_____

[3]In his defense, Trooper Smith points to the fact that there was "no use of weapons," (Docket No. 27 at p. 12), and indeed, it is fortunate that Trooper Smith did not use any weapons against the plaintiff pursuant to handcuffing him and pushing him into various things. However, the defendant's prudence in this regard does not erase his other actions.

10

that he did not intend to escape the defendant.

### III. Whether the Arrest was Lawful

The defendant argues that, even if his conduct at the Coconut Bay Café amounted to an arrest, it was a lawful one, for which he had probable cause. A warrantless arrest is permissible under the Fourth Amendment only "where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *see also United States v. Watson*, 423 U.S. 411, 417-424 (1976). Whether probable cause exists "depends upon the reasonable conclusions to be drawn from the facts known to the arresting officer at the time of the arrest." The plaintiff has proffered sufficient evidence such that a jury could find that the defendant did not have probable cause to arrest the plaintiff.

In addition, the plaintiff alleges that the defendant used excessive force in arresting the plaintiff. Whether or not an arrest involved excessive force is to be determined through a "calculus of reasonableness." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The "reasonableness" of a particular use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight;" however, it is also important to note that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying motivation." *Id.*, *see also Scott v. United States*, 436 U.S. 128, 137-39 (1978). As discussed above, viewed in the light most favorable to the plaintiff, the evidence shows the existence of a genuine issue of material fact as to whether the defendant's use of force was reasonable. This will be an issue for the jury to decide.

11

## IV.    Qualified Immunity

Finally, the defendant asserts that he is entitled to qualified immunity.  Viewing the facts in the light most favorable to the plaintiff, however, the defendant is not so entitled.  Qualified immunity "shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Smoak v. Hall*, 460 F.3d at 777.  In determining whether a law enforcement officer is entitled to qualified immunity, the court must engage in a two step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005).

Under the plaintiff's allegations, the defendant violated the plaintiff's right of freedom from unreasonable seizure under the Fourth Amendment.  In determining whether that right has been clearly established, "the relevant inquiry is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Smoak v. Hall*, 460 F.3d at 778 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  The court finds that it would have been clear to a reasonable officer that the alleged seizure violated the Fourth Amendment.  Under the plaintiff's allegations, the defendant lacked a reasonable suspicion to stop the plaintiff, and yet he took action amounting to an arrest, without any cause to believe that the plaintiff was armed or presented any threat to the defendant or others.  In this Circuit, such action constitutes a clear violation of the Fourth Amendment.  *See, e.g., Bennett v. City of Eastpointe*, 410 F.3d at 823.

12

**<u>CONCLUSION</u>**

For the reasons stated herein, the defendant's Motion for Summary Judgment will be

denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

Case 3:05-cv-00748   Document 36   Filed 10/24/06   Page 13 of 13 PageID #: 749